IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AUTO-OWNERS MUTUAL
INSURANCE COMPANY,

            Plaintiff,

v.                                       Case No. 20-2365-JWB

BRICKS & STONES, LLC, and
DD&B CONSTRUCTION, INC.,

            Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motions for summary judgment (Doc. 17) and to strike (Doc. 63), and Defendant DD&B Construction, Inc.'s ("DD&B") motions for leave to file surreply (Doc. 37) and for leave to file an amended answer (Doc. 42.) The motions are adequately briefed and are ripe for decision. (Docs. 18, 32, 35, 38, 43, 45, 46, 48, 50, 59, 64, 65.) For the reasons stated herein, Plaintiff's motion for summary judgment and motion to strike, as well as DD&B's motion for leave to file surreply, are DENIED. DD&B's motion to file an amended answer is GRANTED.

**I. Background**

Plaintiff filed this action seeking a declaration of the parties' rights under an insurance policy it issued to Defendant Bricks & Stones, LLC ("B&S"). In particular, Plaintiff seeks a declaration that it has no obligation to defend or indemnify B&S on an underlying suit brought by DD&B.

The underlying suit was filed by DD&B in Wyandotte County, Kansas, on November 28, 2018. It alleged that B&S performed defective work as a subcontractor on a project for which DD&B was the general contractor. Plaintiff contends it was not notified of the suit until January of 2020, and that, under a reservation of rights, it thereafter retained a lawyer to represent B&S. The lawsuit resulted in a default judgment against B&S after it failed to comply with discovery obligations. In its motion for summary judgment, Plaintiff argues it is relieved of any obligation under the policy because it received untimely notice of the underlying suit and was prejudiced because the delay resulted in the entry of the default judgment against B&S.

**II. Uncontroverted Facts**

Plaintiff issued a policy of insurance to B&S, policy number 134605-75667669, for the period from November 25, 2016 to November 25, 2017. The policy was renewed for a one-year period from November 25, 2017, to November 25, 2018. It expired on November 25, 2018. (Doc. 18-17 at 1-2.) Cornerstone Kansas City, LLC ("Cornerstone"), an insurance broker, procured the policy for B&S.

The policy included commercial general liability ("CGL") coverage. It provided in part that if a claim was made or suit brought against any insured, the insured must immediately record the specifics of the claim or suit and notify Plaintiff as soon as practicable. (*Id.* at 2.)

On November 28, 2018, DD&B filed suit against B&S in the district court of Wyandotte County, alleging breach of contract, negligence, breach of warranties, and breach of implied warranties. DD&B alleged that B&S's contract required it to properly install flashing and drip edges around windows, but that B&S negligently failed to do so. DD&S further alleged B&S was notified of the defect but failed to cure it, forcing DD&B to hire someone else to do it and requiring DD&B to make repairs to stone veneers and stucco around windows. It alleged that the defect

2

resulted in damage to windows, interior finishes, carpeting, and trim. (Doc. 18-17 at 6.) On January 8, 2019, B&S filed an answer and counterclaim. On April 3, 2019, counsel for B&S withdrew, leaving B&S unrepresented. On April 19, 2019, DD&B filed a motion to compel B&S to properly respond to interrogatories and requests for production of documents. On June 4, 2019, the district court granted the motion to compel in an order stating in part that if B&S failed to properly respond, its answer would be stricken and a judgment would be entered against it. (*Id.* at 2-3.) B&S failed to comply with the deadline in the June 4 order. On June 17, 2019, DD&B filed a motion to strike B&S's pleadings and for default judgment.

In a letter dated September 6, 2019, counsel for DD&B notified B&S of a recent discovery of windows leaking due to B&S's alleged failure to install drip edges above windows on the project. The letter stated in part that DD&B was placing B&S's insurance carriers on notice, via the letter, of the damages allegedly caused by B&S and of DD&B's intent to seek reimbursement. Jolene Robbins of Cornerstone was copied on the letter and a copy of an ACORD Certificate of Insurance was attached to the letter.[1] The certificate stated that DD&B is an additional insured under the policy and it listed Robbins as the contact person on the policy. (Doc. 32-1.) The ACORD Certificate contained various disclaimers, including that it conferred no right on the certificate holder (DD&B) and did not amend, extend, or alter the coverage afforded by the policies. (*Id.*) In an accompanying email, DD&B's attorney asked Robbins to place Plaintiff and another insurance carrier on notice of the claim as soon as possible. The email also said DD&B

---

[1] As noted in *Greuel v. Cont'l Ins. Co.*, No. CIV-14-303-RAW, 2015 WL 5709414, at *2 (E.D. Okla. Sept. 29, 2015), an ACORD Certificate of Insurance is a standard form widely used in the insurance industry. It is ordinarily completed by an insurance broker at the request of an insurance policyholder. It evidences the fact that a policy has been written and includes a statement of the coverage in general terms. *Id.* (citing, inter alia, *True Oil Co. v. Mid–Continent Cas. Co.*, 173 F. App'x 645, 648 n. 2 (10th Cir.2006)).

would offer Plaintiff the opportunity to inspect the premises before repairs were performed but indicated this would have to occur as soon as possible. (Doc. 32-2.)

On September 13, 2019, DD&B withdrew its motion for default judgment in order to file an amended complaint. (Doc. 18-17 at 3.) On October 24, 2019, DD&B filed its amended pleading seeking additional damages caused by the leaking windows.

On October 25, 2019, counsel for DD&B emailed Cornerstone employee Patrick Martin. Martin in turn emailed Jean Minardi, Vice President of Risk for Cornerstone, pointing out the September 6 message from DD&B and asking, "[H]ave we put the carriers on notice?" (Doc. 32-11.) Minardi emailed counsel for DD&B on October 28, 2019. Her email reflected that she and DD&B's counsel had spoken that morning and that "to properly advise and move forward" Minardi would need a date of loss and date of occurrence. (*Id.*) DD&B's counsel emailed back with that information on November 11. (Doc. 32-13 at 2-3.)

On December 2, 2019, Minardi sent Plaintiff an ACORD "Liability Notice of Occurrence/Claim" describing the claim by DD&B against B&S.[2] The form stated in part that B&S:

> did work for DD&B Construction at the Homewood Suites in Kansas City, Ks. Work was completed 7/19/17 through 5/14/2018. Insured did windows flashing and brick work.
>
> DD&B is listed as an additional Insured on the policy. The water leak to the window was discovered 5-20-19. All the windows will need to be replaced. Please contact [DD&B's counsel].
>
> See attached documents/advised atty we have no policies in force after 11/25/18.

(Doc. 32-3 at 1-2.)

---

[2] The December 2 email was addressed to independence.clm@aoins.com. Evidence in the record indicates this address belongs to Plaintiff. (*See* Doc. 32-14 at 1-2.)

On January 7, 2020, counsel for DD&B emailed Minardi stating, "Last we spoke you informed me that a claim had been made to [B&S's] insurance on behalf of DD&B as an additional insured under the policy." (Doc. 32 at 10.) On January 8, Minardi emailed back stating she had made two submissions to Plaintiff regarding DD&B's loss. (Doc. 32-13.) She stated that the first submission, which reported a loss date of May 20, 2019 (when the damage was first discovered), was rejected because there was no active policy at that time. Minardi said Plaintiff had established a claim number and would look into the second submission, on which she had reported a loss date of July 19, 2017, the date B&S began performing its work. (*Id.*) Minardi stated that counsel would "hear from someone at Auto Owners in the next 24 hours." (Doc. 32-4 at 1.) On January 8, Minardi also emailed Sara Slaybaugh, an adjuster employed by Plaintiff, asking whether a claim had been established for the notice of claim she "reported on 12/2/19?" (Doc. 32-14 at 2.) Minardi later notified counsel for DD&B that Slaybaugh was the adjuster on the claim. (Doc. 32 at 10.)

On January 16, counsel for DD&B sent a letter to Plaintiff summarizing the underlying litigation, noting that DD&B had heard nothing from Plaintiff, and stating that "DD&B, both as a claimant against B&S and as an additional insured under B&S's insurance policy, has submitted claim no. 300-00009715-2020" [the claim number previously provided by Minardi on January 8]. (Doc. 32-5.) The letter asked for a formal response to the claim and stated that if DD&B did not hear from Plaintiff by January 24, it would proceed to take a default judgment against B&S and would seek to collect from B&S and Plaintiff. (*Id.*) On January 24, 2020, Plaintiff emailed back that it was "attempting to reach the named insured" and that a coverage review of the lawsuit would need to be performed, which "takes several weeks." (Doc. 35-1 at 1.)

On January 30, Plaintiff engaged attorneys Derek MacKay and Brian Bartlett to represent B&S in the underlying action. Bartlett emailed counsel for DD&B and the parties agreed that

5

B&S could have an extension of time until February 14 to answer. (Doc. 32 at 11.) Bartlett also asked for a copy of the outstanding discovery requests and for an extension of time to February 28 to respond. (*Id.* at 12.) Counsel for DD&B later agreed to the extension and forwarded the discovery requests.

On February 6, Plaintiff advised B&S it would provide a defense under a reservation of rights. (*Id.* at 11.) The reservation of rights letter mentioned policy exclusions relating to B&S's own work and asserted that B&S's failure to timely report the underlying action created a coverage issue. (Doc. 18-2.) On February 19, B&S's counsel filed an answer to the amended petition.

Counsel for B&S failed to respond to the discovery requests by February 28. A declaration from attorney Bartlett states that he first attempted to contact B&S by email on February 1 but received no reply. He thereafter attempted to reach Ali Bagher or other B&S representatives at various email addresses and phone numbers but was unsuccessful. He states that as of the discovery deadline of February 28, he had obtained no response and was unable to provide the discovery. He "considered requesting another informal extension of time" but concluded that would be futile because he "could not reasonably determine whether or when" he would be able to provide responses. (Doc. 35-2 at 3-4.)

On March 18, counsel for DD&B emailed asking whether B&S's counsel intended to respond to the discovery requests. In reply, Bartlett emailed that he had been unable to contact anyone affiliated with B&S. Bartlett stated that "I did ask the insurer to run a skip trace or authorize us to hire a private investigator to try and locate Mr. Bagher, but have not heard back. I will follow up again with the insurance company in that regard." (Doc. 35-2 at 4.) He indicated he would understand if DD&B felt compelled to seek remedies from the court. (*Id.*)

According to Bartlett, on or about April 9, DD&B's attorney called to ask if Plaintiff would be interest in discussing settlement, and stating that if it were not, DD&B would file a motion for default judgment against B&S. (*Id.* at 5.)

On April 20, DD&B filed a motion for default judgment, citing B&S's failure to comply with the court's June 4, 2019 discovery order, and alleging that B&S remained in violation of the order more than 13 months after the deadline. (Doc. 18-17 at 4.)

Bartlett states that "[a]fter informing [Plaintiff] of DD&B's inquiry, I obtained approval to hire a private investigator to assist in trying to locate Ali Bagher." (Doc. 35-2 at 5.) The investigator informed Bartlett on April 23 that Bagher's daughter had been located. The daughter was contacted and conveyed a message to Bagher, who called Bartlett later the same day and "agreed to meet with me the following week to assist me in preparing responses to DD&B's discovery requests." (*Id.* at 5-6.)

On May 5, B&S served the discovery responses that were the subject of the June 4, 2019 order. On June 17, the district court granted DD&B's motion for default judgment, citing B&S's discovery failures and Ali Bagher's failure to "follow through with his requirements as a defendant in the action" despite having received notice. (Doc. 18-17 at 5; Doc. 18-16 at 11.)

After granting the motion for default judgment, the district court held a hearing on damages on September 17, 2020. The attorneys for B&S appeared, as did DD&B's attorney, and the court heard testimony from a DD&B representative and from Ali Bagher of B&S. The journal entry of judgment entered in DD&B's favor following the hearing awarded $140,110.92 for damages for repair costs already incurred; $25,260.62 in prejudgment interest; $789,112.00 for damages for repairs still needed; $8,870.50 for loss of revenue; attorney's fees of $20,859.20; and post-judgment interest at the statutory rate of 10%. (Doc. 32-8 at 3.) B&S did not appeal the order

7

granting default judgment. Plaintiff filed the instant action for declaratory relief on July 28, 2020. (Doc. 1.)

### III. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Id.* Any statement of fact that has not been controverted by affidavit or an exhibit is deemed to be admitted. D. Kan. Rule 7.4. Also, the court will only consider facts based on personal knowledge or supported by exhibits. Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### IV. Summary Judgment Analysis

Plaintiff's motion for summary judgment argues that Plaintiff is relieved of any obligation under the policy because it received untimely notice of the underlying suit and was prejudiced because the delay resulted in the entry of the default judgment against B&S.

8

In deciding this issue, the court must first determine what law governs the claims. Because this action is based on the court's diversity jurisdiction, the court looks to Kansas choice-of-law rules to determine which state's law governs claims arising from the insurance policy. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (the court applies the forum state's choice-of-law rules in a diversity action). Kansas "follows the general rule that the law of the state where the insurance contract is made controls." *Safeco Ins. Co. of America v. Allen*, 262 Kan. 811, 941 P.2d 1365 (1997). The policy in this case was issued to B&S in Kansas; Kansas law therefore provides the substantive law for determining the parties' rights relating to the contract.

A. <u>Kansas law – insured's failure to give notice of suit</u>. In *Geer v. Eby,* 309 Kan. 182, 432 P.3d 1001 (2019), the Kansas Supreme Court addressed an insurer's claim that it was relieved from obligation under an insurance policy because of its insured's failure to provide timely notice of a lawsuit. That case concerned two individuals – Geer and Eby – who had a traffic accident. Eby reported the accident to his insurer, Key Insurance ("Key"). Geer's insurer, State Farm, paid Geer's property damages and then demanded subrogation of over $24,000 from Key. Key offered to pay its policy limit of $10,000 if Geer would release Eby, but the offer was rejected. Geer later filed suit against Eby and obtained a default judgment of over $27,000 after Eby failed to answer the petition. *Geer,* 309 Kan. at 183. Eby "never notified Key of the petition, motion for default judgment, or entry of default judgment." *Id.* at 184. Key's first notice of the suit came when State Farm sent a letter with a copy of the default judgment. *Id.* at 183-84. When Geer brought a garnishment action against Key to collect on the policy, Key argued that Eby's failure to provide notice and failure to cooperate barred any recovery under the policy.

The Kansas Supreme Court agreed. After reviewing the standards for insurance contracts generally, the court addressed cooperation clauses, which typically place a duty on the insured to

9

give notice of a loss and to cooperate in defending a claim. *Id.* at 193. The court noted insurers are at an information disadvantage with respect to such claims and must rely on the insured to provide notice. The insurer has corresponding duties to defend the claim, investigate, and settle meritorious claims. The duty of cooperation is typically a condition precedent to any action by the insured against the insurer, meaning if it is not performed "the contract between the parties cannot be enforced." *Id.* at 194.[3] *Geer* nevertheless recognized "the modern trend … away from automatic forfeiture of coverage in such situations and toward a balancing of the interests of the insurer and the insured," concluding that an insurer is required to show prejudice from untimely notice:

> "'[U]ntimely notice, even if a breach of a condition precedent to coverage, is not alone sufficient to excuse performance of the insurer or relieve the insurer of its obligation to provide coverage when coverage otherwise should be afforded. Kansas also requires a showing of actual prejudice as a result of the untimely notice. Prejudice is not presumed and the burden is on the insurer to show that the prejudice is substantial. 'When the loss will result from liability owed a third party, the insured is only prejudiced if its ability to defend against that imposition of liability is diminished by the delay.' Generally, whether an insurer has been prejudiced from the failure to provide timely notice is a question of fact, but where the relevant facts are not in dispute it may be determined as a matter of law. [Citations omitted.]"

*Geer*, 309 Kan. at 194–95 (quoting *AT & SF Ry. Co. v. Stonewall Ins. Co.,* 275 Kan. 698, 758-62, 71 P.3d 1097 (2003) (quoting *Cessna Aircraft Co. v. Hartford Acc. & Indem. Co.*, 900 F.Supp. 1489, 1515 (D. Kan. 1995)).

*Geer* observed that in *AT & SF Ry. Co.,* the insurers could not show prejudice because they were excess carriers with no right to control the defense or settlement of any claim, and they

---

[3] The 2017 policy in the instant case included the following provisions: "If any claim is made or 'suit' is brought against any insured, you must: (1) immediately record the specifics of any claim or 'suit' and the date received; and (2) Notify us as soon as practicable. You must see to it that we receive written notice of any claim or 'suit' as soon as practicable." (Doc. 1-3 at 141.) "You and any other involved insured must: (1) Immediately send us copies of any … demands, notices, summonses or papers in connection with any claim or 'suit' … [and] (3) Cooperate with us in the investigation or settlement of any claim or defense of any 'suit.'" (*Id.*) "No person or organization has a right under this Coverage Part: … To sue us on this Coverage Part unless all of its terms have been fully complied with." (*Id.*)

10

conceded they would have acted no differently had they received earlier notice. *Id.* at 195. By contrast, in *Geer* the court said "prejudice to Key as a matter of law [was] evident," because if Key had known of the suit it would have been under a duty to defend the allegation that Eby was negligent, "which would have resulted in either a factual finding on liability or a settlement." *Id.* at 200. Instead, Key was left with a choice of not contesting the garnishment or raising a challenge that "placed it at odds with its insured and potentially exposed it to greater financial risk." *Id.* Key thus "carried its burden to show the breach and prejudice necessary to establish its policy defense." *Id.* at 200-01.

  B. <u>Application to the uncontroverted facts</u>.   Plaintiff contends it was prejudiced as a matter of law by receiving late notice of the lawsuit because B&S's failure to comply with the June 2019 discovery order formed the basis of the default judgment subsequently entered, and that failure occurred before Plaintiff received notice of the suit. (Doc. 18-17 at 9-10.) It argues the late notice prevented Plaintiff from asserting any affirmative defenses or investigating the alleged construction defects in the underlying suit. (*Id.* at 10.) In short, it contends that "B&S's pre-notice actions resulted in a default judgment." (Doc. 35 at 2.)

  The burden is on the insurer to show that it suffered substantial prejudice, *Geer*, 309 Kan. at 195. In *Geer,* the insurer "did not know of the lawsuit until six months after default judgment." *Id.* at 199. The timeline in the instant case is decidedly different. The uncontroverted facts show that Plaintiff had at least some opportunity to investigate and defend the lawsuit. There is no dispute that Plaintiff received notice of the suit months before default judgment was entered. DD&B emailed Cornerstone on September 6, 2019, asking Cornerstone to convey notice of its claim to Plaintiff. If a jury concluded Cornerstone was Plaintiff's agent for purposes of receiving notice, then Plaintiff had notice of the claim nearly ten months before default judgment was

11

entered. Even if Cornerstone was not Plaintiff's agent, DD&B cites evidence that Cornerstone put Plaintiff on notice of the suit in a December 2, 2019 email, which was still about seven months before default judgment. Despite the December 2 notice, it was not until almost two months later (January 24, 2020) – after DD&B threatened to seek default judgment and to collect it from Plaintiff – that Plaintiff engaged attorneys to represent B&S. Even so, January 24 was still several months before the default judgment was granted. A jury could find that, unlike *Geer,* Plaintiff had an opportunity to defend its insured in the underlying litigation at a time when a default judgment might have been avoided. Under these circumstances, a jury could find the late notice to Plaintiff was not the determinative factor in the default judgment and thus did not cause Plaintiff substantial prejudice.

According to *Geer,* the question of whether a delay in notice caused prejudice is ordinarily a question of fact. *Geer*, 309 Kan. at 195. The court finds it is a genuinely disputed question of fact in this case. The degree to which the attorneys engaged by Plaintiff were unable to discover evidence or assert defenses as a result of the delay in notice of the suit is genuinely controverted. Similarly, the uncontroverted facts do not show the degree to which Plaintiff was prevented from analyzing the claims, adopting an approach to resolve them, or engaging in arms-length negotiations as a result of the delay. *Cf. Hunt v. Kling Motor Co.,* 841 F. Supp. 1098, 1103-04 (D. Kan. 1993) (insurer could not do the foregoing things because default judgment was entered before it received notice of the action). Plaintiff essentially argues the die was cast by the time its attorneys entered the underlying case because B&S had already failed to comply with the June 4, 2019 discovery order. (*See* Doc. 35 at 19 ("liability against B&S was 'virtually assured' prior to notice to Auto-Owners.")). But the evidence does not show that a default judgment was inevitable at that point. It is not unreasonable to infer that default could have been avoided had Plaintiff acted

sooner and had B&S's attorneys sought to produce the requested discovery responses sooner. As it was, the requested discovery was not produced until May 5, 2020 – over a year after it was due – which proved to be too late for the district court. But Plaintiff's suggestion that default was a foregone conclusion overlooks evidence that Plaintiff received notice of the underlying suit well before its attorneys entered their appearance – at least by December 2, 2019, and perhaps as early as September 6, 2019, that Plaintiff was arguably dilatory in authorizing or pursuing an investigation of the claim, and that the attorneys for B&S produced the requested discovery only after Plaintiff, under renewed threat of default judgment, finally authorized an investigation to locate Bagher.[4]

Viewed in DD&B's favor, the facts here are materially different from *Geer*, where the insurer had no opportunity to resolve or defend the claim. *Cf. Hunt,* 841 F. Supp. at 1105 ("there is absolutely no showing that … Universal standing in the shoes of its insured, would have been able to set aside the default judgment….") DD&B has cited evidence from which a jury could infer that Plaintiff could have acted sooner and thereby avoided default judgment and defended the claim on the merits. With respect to the merits of the claims in the underlying suit, the court notes Plaintiff has not specified or explained what defenses Plaintiff was unable to assert as a result of the delay in notice. At any rate, for reasons indicated above the timing of events and the genuinely disputed issue of whether Plaintiff was prejudiced by the delay make summary judgment inappropriate in this case.

**V. DD&B Motion to File Surreply (Doc. 37) and Plaintiff's Motion to Strike (Doc. 63.)**

---

[4] To the extent Plaintiff contends a lack of cooperation by Bagher prejudiced Plaintiff's ability to defend the underlying suit, that is not the same question as whether Plaintiff was prejudiced by late notice of the lawsuit, and the delay in notice is the only question raised by Plaintiff in its motion for summary judgment. (Doc. 18-17 at 6.)

DD&B filed a motion for leave to file a surreply, arguing that Plaintiff injected new arguments and evidence into its reply brief. (Doc. 38 at 3.) As Plaintiff points out, however, DD&B did not attach a copy of its proposed surreply to the motion for leave as required by D. Kan. R. 15.1(a)(2). DD&B's argument (Doc. 46 at 2) that it complied with the rule by attaching a copy of Bartlett's declaration to its motion for leave is unavailing. That document was already attached to Plaintiff's reply brief (Doc. 35-2), and thus did not require the filing of a surreply for the court to consider the document. DD&B's motion for leave to file a surreply is DENIED for failure to satisfy the requirements of D. Kan. R. 15.1(a)(2).

Plaintiff has filed a motion (Doc. 63) to strike Doc. 59, which was a "revised supplemental response" filed by DD&B concerning its motion for leave to file a surreply. The court concludes the motion to strike (Doc. 63) should be denied as moot, as the court concludes that DD&B's motion for leave to file a surreply should be denied.

**VI. Motion for Leave to File Amended Answer (Doc. 42.)**

DD&B moves to file an amended answer that includes new counterclaims against Plaintiff for breach of contract, breach of the duty of good faith and fair dealing, and vexatious refusal to pay. (Doc. 43 at 3.) The proposed counterclaims include allegations that DD&B was expressly named as an additional insured under the policy; that it performed all of its obligations under the policy; that DD&B submitted a claim on Plaintiff in its capacity as an additional insured; that B&S's deficient work on the project caused damage to the project; that DD&B is entitled to indemnity under the policy for the damages it sustained as a result of B&S's failure to perform its work in a proper manner; and that Plaintiff breached the policy by failing to provide coverage to DD&B as an additional insured. (Doc. 43-1 at 13-16.) DD&B argues it only recently learned of the bases for these claims after receiving discovery documents produced by Cornerstone. (*Id.*).

14

Plaintiff opposes the motion, arguing the proposed amendments are both futile and untimely. (Doc. 48.)

Plaintiff argues leave to amend should be denied on the basis of untimeliness because, it contends, DD&B knew of the alleged claims when it filed its initial answer. (*Id.* at 10.) The court is not persuaded by this argument. As Plaintiff acknowledges, no deadline for amendments to the pleadings is in place because Plaintiff filed an early motion for summary judgment. DD&B contends it only learned of the factual basis for its counterclaims in the course of limited discovery granted in connection with the motion for summary judgment. (Doc. 43 at 3-4.) Plaintiff has not shown otherwise. Nor has Plaintiff established any prejudice from the delay. *Cf. Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (amendment was not untimely where plaintiff adequately explained the delay). Under the circumstances, Plaintiff has not shown that leave to amend should be denied for untimeliness.

The applicable standard in these circumstances provides that a party may amend its pleading with the court's leave and that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993)). A proposed amendment is futile if the pleading, as amended, would be subject to dismissal under the standards of Rule 12(b)(6). That standard asks whether the amended claim contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Liechty v. Bethel Coll.*, No. 19-1064-JWB, 2020 WL 954033, at *3 (D. Kan. Feb. 27, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff contends the same untimely notice and prejudice arguments it raised on summary judgment show that DD&B's counterclaims are futile. (Doc. 48 at 3.) But as previously discussed, there are genuine issues of fact that preclude summary judgment on those issues. Issues of delayed notice and prejudice to Plaintiff thus do not render DD&B's asserted counterclaims futile. Plaintiff next contends the claims are futile "because DD&B does not have either a first-party claim or a third-party claim against Auto-Owners…." (Doc. 48 at 6.) Plaintiff's arguments about the effect of first-party and third-party insurance claims are not only confusing, they are not tied to any language in this particular insurance policy. (*Id.* at 6-8.) "The party opposing the amendment has the burden of showing the proposed amendment is futile." *Team Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, No. 19-2710-HLT-KGG, 2021 WL 492882, at *2 (D. Kan. Feb. 10, 2021) (citations omitted.) Plaintiff's generic arguments about the nature of first and third-party claims are insufficient at this point to meet Plaintiff's burden of showing futility.

Plaintiff next contends the allegations of breach of contract and breach of the covenant of good faith and fair dealing are futile "because DD&B failed to explicitly state which policy provision(s) Auto-Owners breached." (Doc. 48 at 8.) But DD&B has alleged that the policy "expressly names DD&B as an Additional Insured party," that DD&B has demanded that Plaintiff provide coverage to DD&B as an Additional Insured "for the damages caused by B&S' deficient and defective work on the Project," and that Plaintiff has failed to pay or respond to its claim and has thereby "breached the aforesaid Policy in that it completely failed to provide coverage under the Policy to DD&B, an Additional Insured…." (Doc. 43-1 at 13-14.) While these allegations are not models of clarity or precision, they are sufficient to inform Plaintiff of the basis of the claims and, assuming the allegations are true, they are sufficient to plausibly state a claim for relief. Plaintiff also argues DD&B has failed to state a claim for breach of the duty of good faith and fair

dealing because such a claim cannot stand without breach of some particular contract provision. (Doc. 48 at 9.)  This statement of the Kansas law is correct, as the court has previously recognized. *See H&C Animal Health, LLC v. Ceva Animal Health, LLC,* 499 F. Supp.3d 920, 940 (D. Kan. 2020) (breach of the implied covenant of good faith and fair dealing is not a separate claim, but rather a legal argument related to a breach of contract claim.)  But for the reasons indicated above, Plaintiff has sufficiently alleged a breach of contract relating to failure to provide liability coverage for DD&B as an Additional Insured, such that DD&B may be able to show a breach of the duty of good faith and fair dealing with respect to the same coverage provisions.  Plaintiff has thus failed to show that the amendment should be denied on the basis of futility.

## VII.  Conclusion

Plaintiff's motion for summary judgment (Doc. 17) is DENIED.  DD&B's motion for leave to file a surreply (Doc. 37) is DENIED.  Plaintiff's motion to strike (Doc. 63) is DENIED AS MOOT.  DD&B's motion for leave to file an amended answer (Doc. 42) is GRANTED; DD&B may filed its amended answer within seven days of this order.

IT IS SO ORDERED this 9th day of June, 2021.

             _____s/ John W. Broomes_____
             JOHN W. BROOMES
             UNITED STATES DISTRICT JUDGE